## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| HORACE CARVALHO, Individually and on Behalf of All Other Persons Similarly Situated, | ) ) ) | **Civil Action No.: 4:13-cv-1166** |
| Plaintiff, | ) ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) ) | |
| MAGNUM HUNTER RESOURCES CORP., GARY C. EVANS, RON ORMAND, JAMES W. DENNY, III, and H.C. "KIP" FERGUSON, III, | ) ) ) ) ) | |
| Defendants | ) ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff Horace Carvalho ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Magnum Hunter Resources Corp. ("MHR" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased MHR securities between May 3, 2012 through April 16, 2013, inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 against the Company and certain of its top officials.

2.      MHR, based in Houston, Texas, is an independent exploration and production company engaged in the acquisition, development and production of crude oil, natural gas and natural gas liquids, primarily in West Virginia, Kentucky, Ohio, Texas, North Dakota and Saskatchewan, Canada. The Company is active in five of the unconventional shale resource locations in North America, namely the Marcellus Shale, Utica Shale, Eagle Ford Shale, Pearsall Shale and Williston Basin/Bakken Shale.

3.      On March 18, 2013, MHR announced that it would delay filing its annual report on Form 10-K for the year ended December 31, 2012. The Company attributed its delay to the discovery of "certain material weaknesses in its internal controls over financial reporting."

4.      Thereafter, on April 16, 2013, MHR announced that the Company had dismissed PricewaterhouseCoopers LLP ("PWC") as the Company's independent registered public auditor effective immediately.   PWC, according to MHR, had identified certain issues in the Company's financial reporting, including: (i) that information had come to PwC's attention that if further investigated may have a material impact on the fairness or reliability of Company's consolidated financial statements, and this information was not further investigated and resolved to PwC's

satisfaction prior to its dismissal, and (ii) of the need to significantly expand the scope of PwC's audit of the Company's consolidated financial statements for the fiscal year ended December 31, 2012.

5.     MHR further reported that, "PwC believe[s] that internal controls necessary for the Company to develop reliable financial statements did not exist, and therefore, PwC significantly expanded the scope of its audit of the Company's consolidated financial statements for the fiscal year ended December 31, 2012 for purposes of completing such audit."

6.     On this news, the Company's shares declined $0.49 per share, or over 14.5%, to close on April 17, 2013, at $2.83 per share.

7.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) errors existed in the Company's financial reporting practices relating to: Property Accounting and Transfers of Unproved Properties, Oil and Gas Reserves, Income Taxes, Accounting regarding MHP, Prior Period Restatements, Ability to Meet Debt Covenants, Capitalized Interest, Assets Held for Sale;  (2) the Company lacked adequate internal and financial controls, including issues relating to: Effective Control Environment to Meet the Company's Growth, Financial Reporting, Leasehold Property Costs, Complex Accounting Issues and Miscellaneous Internal Control Deficiencies; and (3) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's shares, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

11.     Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b) as MHR's headquarters are located in this district, and the acts, conduct and other wrongs alleged in this Complaint occurred in this District.

12.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13.     Plaintiff, as set forth in the attached certification, purchased MHR shares at artificially inflated prices during the Class Period and has been damaged thereby.

14.     Defendant MHR is a Delaware corporation, and is headquartered in Houston, Texas.

15.     Defendant Gary C. Evans ("Evans") currently serves as the Company's Chairman and CEO, assuming his current role in July 2009.

16.     Defendant Ronald D. Ormand ("Ormand") currently serves as MHR's Executive Vice President and CFO, assuming this role in July 2009.

17.    Defendant James W. Denny III ("Denny") currently serves as MHR's Executive Vice President and COO, assuming this role in July 2009.

18.    Defendant H.C. "Kip" Ferguson III ("Ferguson") currently serves as MHR's Executive Vice President of Exploration, assuming this role in September 2009.

19.    The defendants referenced above in ¶¶ 15- 18 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20.    MHR, based in Houston, Texas, is an independent exploration and production company engaged in the acquisition, development and production of crude oil, natural gas and natural gas liquids, primarily in West Virginia, Kentucky, Ohio, Texas, North Dakota and Saskatchewan, Canada. The Company is active in five of the unconventional shale resource locations in North America, namely the Marcellus Shale, Utica Shale, Eagle Ford Shale, Pearsall Shale and Williston Basin/Bakken Shale.

### Materially False and Misleading
### Statements Issued During the Class Period

21.    On May 3, 2012, the Company issued a press release disclosing its financial results for the first quarter of 2012.  The Company reported an increase in total revenues of 293% to $57.2 million for the three months ended March 31, 2012 compared to $14.5 million for the three months ended March 31, 2011. The Company reported a net loss of $17.1 million or ($0.13) per basic and diluted common shares outstanding for the three months ended March 31, 2012, compared to a net loss of $9.3 million, or ($0.12) per basic and diluted common shares outstanding for the three months ended March 31, 2011.

22.    On July 31, 2012, the Company announced an operational update on each of the Company's upstream unconventional resource plays for the second quarter of 2012 which includes (i) the Eagle Ford Shale, (ii) the Williston Basin, and (iii) the Appalachia/Marcellus/Utica Shales. Additionally, the Company provided an operational update for the Company's midstream division, Eureka Hunter Pipeline, LLC. MHR reported, that the Company achieved a record average production rate of 12,893 barrels of oil equivalent per day ("Boepd") during the second quarter of 2012. This represented a 161% increase from the production reported for the second quarter of 2011.

23.    On August 9, 2012, the Company issued a press release disclosing its financial results for the second quarter of 2012. In its press release announcing financial results, the Company reported an increase in total revenues of 104% to $60.3 million for the three months ended June 30, 2012 compared to $29.5 million for the three months ended June 30, 2011. The Company also reported a net loss of $14.6 million or ($0.10) per basic and diluted common shares outstanding for the three months ended June 30, 2012, compared to a net loss of $18.5 million, or ($0.16) per basic and diluted common shares outstanding for the three months ended June 30, 2011, and that the Company's net loss per share for the three months ended June 30, 2012, was ($0.04) per basic and diluted common shares outstanding when adjusted for non-cash and non-recurring expenses of $8.0 million.

24.    On October 24, 2012, the Company announced an operational update on each of the Company's upstream unconventional resource plays for the second quarter of 2012 which includes (i) the Eagle Ford Shale, (ii) the Williston Basin, and (iii) the Appalachia/Marcellus/Utica Shales. Additionally, the Company provided an operational update for the Company's midstream division, Eureka Hunter Pipeline, LLC. MHR reported, that the

Company achieved an average production rate of 12,475 barrels of oil equivalent per day ("Boepd") during the third quarter of 2012. This represented a 137% increase from the production reported for the third quarter of 2011. Although third quarter 2012 production decreased slightly on a Boepd basis as compared to second quarter 2012 production, the Company announced that its oil/liquids production increased 17% to 6,865 Boepd in the third quarter of 2012 (55% of total Company wide production) from 5,862 Boepd in the second quarter of 2012.

25.    On November 13, 2012, the Company issued a press release disclosing its financial results for the third quarter of 2012 and nine months ended September 30, 2012. The Company reported an increase in total revenues of 149% to $69.8 million for the three months ended September 30, 2012, compared to $28.1 million for the three months ended September 30, 2011. MHR further reported a net loss of $42.3 million or ($0.25) per basic and diluted common shares outstanding for the three months ended September 30, 2012, compared to a net loss of $2.0 million, or ($0.02) per basic and diluted common shares outstanding for the three months ended September 30, 2011, and that the Company's net loss per share for the three months ended September 30, 2012, was ($0.08) per basic and diluted common shares outstanding when adjusted for non-cash and non-recurring expenses of $28.2 million.

26.    On April 16, 2013, MHR issued a press release reporting on its first quarter 2013 Company-wide operations. In this press release, Defendant Evans, Chairman of the Board and Chief Executive Officer of Magnum Hunter, commented, in relevant part:

> Companywide daily production is quickly approaching 20,000 Boep per day. We will not be lowering our production guidance for the year even after losing approximately 3,200 Boe per day later this month due to the Eagle Ford sale. With the imminent sale and closing of the Eagle Ford Division, we will be reallocating the capital budget previously earmarked for this Division to both the

Appalachian and Williston Basin Divisions and maintain an overall $300 million upstream capital expenditure budget for the year. Our liquidity position will significantly improve at the end of this month with the expectation of completely paying off our existing Senior Revolving Credit Facility at that time. We are most anxious to test our first horizontal Utica well currently drilling in Northern Washington County, Ohio. Management has continued to build the Company's lease acreage position in the Utica Shale as we approach 100,000 gross acres under lease. With our midstream division, we are in a unique position to gather and process new discoveries in this region much more expeditiously than our competition.

27.    The statements referenced in ¶¶ 21 - 26 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them, including that: (1) errors existed in the Company's financial reporting for issues relating to: Property Accounting and Transfers of Unproved Properties, Oil and Gas Reserves, Income Taxes, Accounting regarding MHP, Prior Period Restatements, Ability to Meet Debt Covenants, Capitalized Interest, Assets Held for Sale, (2) the Company lacked adequate internal and financial controls for: Effective Control Environment to Meet the Company's Growth, Financial Reporting,  evaluating Leasehold Property Costs, Complex Accounting Issues and Miscellaneous Internal Control Deficiencies; and (3) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times

### THE TRUTH EMERGES

28.    On February 28, 2013, the truth began to emerge regarding the Company's faulty accounting practices. On that day, MHR filed a Form 12b-25 with the SEC relating to the Company's Annual Report on Form 10-K for the year ended December 31, 2012, stating that the Company needed to delay the filing of its Annual Report:

As previously disclosed in filings with the Securities and Exchange Commission (the "SEC"), in October and November 2012, Magnum Hunter Resources Corporation (the "Company") identified material weaknesses in its internal controls over financial reporting in connection with its (i) lack of sufficient qualified personnel to design and manage an effective control environment, (ii) period-end financial reporting process and (iii) share-based compensation. The Company devoted substantial time and effort to correcting the previously-filed financial statements and information that were impacted by these material weaknesses. Further, the Company implemented, and continues to implement, measures that it believes will effectively address these weaknesses in the future. The implementation of these measures has entailed the substantial efforts of accounting staff and the use of external resources. . .

The change in the Company's independent auditors, which occurred in July 2012, has resulted in a normal transition between accounting firms that has required the Company to devote more resources to this transition. Therefore, additional internal controls and significant review of certain financial matters were required by the new auditors.

29.     Then on March 18, 2013, MHR announced that it would delay filing its annual report on Form 10-K for the year ended December 31, 2012. The Company attributed the delay to certain material weaknesses in its internal controls over financial reporting:

As previously disclosed, Magnum Hunter identified certain material weaknesses in its internal controls over financial reporting in connection with its (i) lack of sufficient qualified personnel to design and manage an effective control environment, (ii) period-end financial reporting processes and (iii) share-based compensation. Magnum Hunter has implemented, and continues to implement, measures to address these weaknesses in the future. These measures have included the employment of a significant number of more experienced accounting personnel, including the addition of the following new personnel: a chief accounting officer, a head of financial reporting, a head of internal audit, a head of tax, two Company controllers, and two regional controllers. In addition, Magnum Hunter is utilizing third party technical resources, including consultants and professional advisory firms, to assist in the implementation of these measures. Magnum Hunter also intends to implement a new integrated accounting and land information system during fiscal year 2013. The Company may identify additional material weaknesses as it finalizes its financial statements for fiscal 2012 and, if so, it will take appropriate measures to address any such weaknesses.

9

The Company's rapid growth, particularly during the last 24 months, has resulted in complex and challenging accounting issues and operational integration matters that have required a significant amount of time and human resources in order to complete the fiscal 2012 audit. Magnum Hunter continues to work diligently with PricewaterhouseCoopers LLP, its independent auditors, to provide all the necessary information, including the finalization of all adjustments and supporting analysis, so they can complete the audit of the Company's financial statements for the fiscal year ended December 31, 2012 as promptly as possible. At this time, Magnum Hunter is not aware of any disagreements with its auditors regarding the Company's fiscal 2012 financial statements. In addition, the Company has not discovered any material errors or omissions that would require a restatement of its previously issued unaudited 2012 quarterly financial information

30.    Then on April 16, 2013, the other shoe dropped, with the Company announcing that it had dismissed PricewaterhouseCoopers LLP ("PWC") as the Company's independent registered public accounting firm effective immediately. PWC, according to MHR, had identified certain deficiencies in the Company's financial reporting, including: (i) that information had come to PwC's attention that if further investigated may have a material impact on the fairness or reliability of Company's consolidated financial statements, and this information was not further investigated and resolved to PwC's satisfaction prior to its dismissal, and (ii) of the need to significantly expand the scope of PwC's audit of the Company's consolidated financial statements for the fiscal year ended December 31, 2012.

31.    The Company reported that PWC had identified several matters ("PwC Identified Matters") which required further auditing, including:

*Property Accounting and Transfers of Unproved Properties*
PwC requested additional information to support the estimation of the valuation of the Company's oil and gas properties (including information regarding the timing of non-cash impairments and lease expirations and extensions). In addition, PwC requested support of the timing of transferring the classification of certain of such properties from unproved to proved and the effect of such transfers on non-cash impairments and depletion. The Company has substantially completed such analysis, which

it will provide to its successor independent accounting firm. Such analysis indicated no material adjustments were necessary other than with respect to transfers and impairments that were recorded in the third quarter ended September 30, 2012 and prior periods. As previously disclosed, the Company anticipates unproved property impairments in the amount of $71 million which will be recorded in the quarter ended December 31, 2012. Further additional adjustments, if any, that would be material would all be non-cash charges.

*Oil and Gas Reserves*

PwC has requested additional information and support for some of the underlying assumptions from which the reserve report issued by the Company's independent petroleum engineering firm on the Company's oil and gas reserves as of December 31, 2012 was derived. Such additional analysis included the proposed capital budget for 2013 supporting such assumptions and analysis of lease operating expenses in the Company's Magnum Hunter Production subsidiary ("MHP"). The Company has completed such analysis and believes no adjustments are necessary to such reserve report as its capital budget supports such assumptions and the MHP lease operating expenses analyzed are consistent with the assumptions made with respect thereto in the reserve report. PwC also requested additional support for the underlying division of interest of properties (which, in addition to oil and gas reserves, could affect other matters including revenues, lease operating expenses and oil and gas properties), although management does not expect the division of interest analysis to result in any material adjustments to these items. In addition, PwC requested that the Company perform additional analysis on its properties in the Tableland Field in Saskatchewan, Canada to determine if any non-cash impairment charges would be required. PwC advised the Company that a material non-cash impairment charge should be recognized for such properties and the Company continues to review this matter based on updated engineering information from its independent petroleum engineering firm. As previously disclosed, the Company anticipates proved property impairments in the amount of approximately $16 million which will be recorded in the quarter ended December 31, 2012. Any such impairment would be a non-cash charge to earnings for 2012. PwC also noted that a 2011 reserve report for certain significant subsidiaries of the Company indicated that it was prepared in accordance with the Canadian Oil and Gas Evaluation Handbook, and at the time of PwC's dismissal, PwC had not received adequate support as to whether such reserve report was prepared in accordance, or was materially consistent, with applicable U.S. and SEC standards. The Company has confirmed that such reserve report was prepared in accordance, and was materially consistent, with applicable U.S. and SEC standards, and it has received a revised cover letter from its independent petroleum engineering

firm to such effect (although the Company had not provided such letter to PwC by the time of its dismissal).

*Income Taxes*

The Company and PwC discussed various issues relating to the Company's treatment of and positions with respect to certain income tax matters. The Company believes that its tax entries for the fourth quarter of 2012 are correct and that there should be no material adjustment to prior period entries.

*Accounting regarding MHP*

PwC requested that the Company review certain assumptions relating to the Company's initial accounting in connection with its acquisition in 2011 of NGAS Resources, Inc., whose operations are now conducted in or under MHP. PwC also requested further analysis regarding the appropriateness of certain credits recorded in lease operating expenses, whether such credits are appropriate deductions in the reserve report, and, if the credits were not deemed to be appropriate deductions, whether changes in reserves would have a material impact on MHP's proved property impairments. The Company has determined, in conjunction with advice from its "Big Four" accounting firm advisor, that such accounting was recorded properly. PwC was still reviewing such matter and there was no final resolution thereof at the time of its dismissal.

*Prior Period Restatements*

The Company has reviewed whether Staff Accounting Bulletin 99 might require certain errors, if any, in prior fiscal years and/or fiscal quarters to be corrected in the applicable prior periods. The Company has determined that the adjustments to date are not material and thus do not require any restatements of prior period financial statements. Further, substantially all adjustments identified to date have been non-cash items.

*Ability to Meet Debt Covenants*

The ability of the Company to comply with its debt covenants in future fiscal periods related primarily to the late filing of the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2012. The Company has obtained waivers relating to this late filing under certain of its debt agreements, and intends to address the issues relating to this late filing arising under the indenture governing the Company's outstanding senior notes. In addition, the Company calculated projected financial statements and projected compliance with associated financial covenants under its debt agreements (based on the assumed closing of the Company's previously announced sale of its Eagle Ford Shale properties in which the cash portion of the purchase price is expected to be approximately $380 million (after purchase price adjustments) as well as the Company's revised upstream capital budget of $300 million). The

Company believes that it will be able to remain in compliance with its financial covenants for the foreseeable future.

Further, the Company has taken, and will continue to take, the appropriate additional actions necessary to prevent or cure any noncompliance with non-financial covenants under the Company's debt agreements as a result of the Company's failure to timely file its periodic reports under the Securities Exchange Act of 1934, as amended (the " Exchange Act "), with the SEC.

*Capitalized Interest*

PwC asked the Company to consider whether certain interest expense associated with its unproved oil and gas properties should be capitalized. The Company's policy is to capitalize interest on expenditures for significant exploration and development projects that last more than six months. The Company and PwC were discussing approaches to capitalized interest but no conclusion had been reached at the time of PwC's dismissal. The Company's preliminary assessment is that it did not have any capitalized interest expense associated with the development of its unproved oil and gas properties because none of such projects exceeded six months. Any such adjustment in this regard would be a positive non-cash increase to net income in prior periods.

*Assets Held for Sale*

In connection with the Company's pending sale of its Eagle Ford Shale properties, PwC asked the Company to consider whether such properties should be classified as "assets held for sale" as of December 31, 2012. The Company, in conjunction with advice from its "Big Four" accounting firm advisor, determined that the conditions required for such classification did not exist at December 31, 2012.

***

32.    On this news, the Company's shares declined $0.49 per share, or over 14.5%, to close on April 17, 2013, at $2.83 per share.

33.    The Company's shares declined further over the course of the next several trading sessions to close on April 22, 2013 at $2.45 per share, a drop of $0.87 or 26% per share from the stock's closing price on April 16, 2013.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired MHR securities during the Class Period (the "Class"); and were damaged thereby.  Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, MHR shares were actively traded on the New York Stock Exchange.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by MHR or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

37.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of MHR;

- whether the Individual Defendants caused MHR to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of MHR shares during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

40.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- MHR shares are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the New York Stock Exchange, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's shares; and

- Plaintiff and members of the Class purchased and/or sold MHR shares between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

41.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## COUNT I

**(Against All Defendants For Violations of
Section 10(b) And Rule 10b-5 Promulgated Thereunder)**

42.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

44.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of shares.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other

16

Class members, as alleged herein; (ii) artificially inflate and maintain the market price of MHR shares; and (iii) cause Plaintiff and other members of the Class to purchase MHR shares and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

45.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for MHR shares. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about MHR's finances and business prospects.

46.     By virtue of their positions at MHR, the defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.  Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

47.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.  As the senior managers

and/or directors of MHR, the Individual Defendants had knowledge of the details of MHR internal affairs.

48.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of MHR.   As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to MHR's businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of MHR shares was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning MHR's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased MHR shares at artificially inflated prices and relied upon the price of the shares, the integrity of the market for the shares and/or upon statements disseminated by defendants, and were damaged thereby.

49.     During the Class Period, MHR shares were traded on an active and efficient market.   Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of MHR shares at prices artificially inflated by defendants' wrongful conduct.   Had Plaintiff and the other members of the Class known the truth, they would not have purchased said shares, or would not have purchased them at the inflated prices that were paid.   At the time of the purchases by Plaintiff and the Class, the true value of MHR shares was substantially lower than the prices paid by

Plaintiff and the other members of the Class. The market price of MHR shares declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

50.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

51.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's shares during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

### COUNT II

**(Violations of Section 20(a) of the
Exchange Act Against The Individual Defendants)**

52.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.     During the Class Period, the Individual Defendants participated in the operation and management of MHR, and conducted and participated, directly and indirectly, in the conduct of MHR's business affairs. Because of their senior positions, they knew the adverse non-public information about MHR's misstatement of income and expenses and false financial statements.

54.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to MHR's financial condition and results of operations, and to correct promptly any public statements issued by MHR which had become materially false or misleading.

55.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press

releases and public filings which MHR disseminated in the marketplace during the Class Period concerning MHR's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause MHR to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of MHR within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of MHR shares.

56.     Each of the Individual Defendants, therefore, acted as a controlling person of MHR. By reason of their senior management positions and/or being directors of MHR, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, MHR to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of MHR and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

57.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by MHR.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dates: April 24, 2013

Respectfully submitted,

**ABRAHAM, WATKINS, NICHOLS, SORRELS, AGOSTO & FRIEND**

By:    /s/ Sammy Ford IV
       Sammy Ford IV
       Federal Bar Number: 950682
       Texas Bar Number: 24061331
       800 Commerce Street
       Houston, Texas  77002
       (713) 222-7211
       (713) 225-0827 Facsimile

**ATTORNEY FOR PLAINTIFF**

**OF COUNSEL:**

**POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP**
Marc I. Gross
Jeremy A. Lieberman
Lesley F. Portnoy
600 Third Avenue, 20th Floor
New York, New York 10017-5516
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665

**POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP**
Patrick V. Dahlstrom
One North LaSalle Street, Suite 2225
Chicago, Illinois 60602
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184